UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

CURTIS LESANE, *individually and on behalf of all
others similarly situated,*

                        Plaintiff,

              - against -

GLOBAL QUALITY TRANSPORTATION d/b/a
ONE LINK LIMO INC.,

                        Defendant.
-----------------------------------------------------------------X

__-CV-____

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

    Plaintiff Curtis Lesane, through his attorneys, Phillips & Associates, Attorneys at Law, PLLC, hereby complains of the Defendant, Global Quality Transportation d/b/a One Link Limo Inc., and alleges as follows:

## NATURE OF THE CASE

    1.    Plaintiff brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") and asserts claims for unpaid wages and unpaid overtime.

    2.    Plaintiff brings claims, in the alternative, for Breach of Contract under New York law, for Defendant's failure to pay Plaintiff for work performed under the terms their employment relationship.

    3.    Plaintiff brings this action on behalf of himself and all other similarly situated employees as a collective action under the FLSA (pursuant to 29 U.S.C. § 216(b)) and as a class action for claims under the New York State Labor Law for unpaid wages and unpaid overtime and under New York law for breach of contract (pursuant to F.R.C.P. 23).

## JURISDICTION AND VENUE

4.      Jurisdiction of this Court is proper under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to these claims occurred in this judicial district.

## PARTIES

7.      Plaintiff **Curtis Lesane** is a resident of Pennsylvania and resides in Quarryville, PA.

8.      Defendant **Global Quality Transportation d/b/a One Link Limo Inc.** ("GQT") is a domestic corporation with headquarters located at 400 Hamilton Avenue, Brooklyn, New York 11231.  GQT has corporate offices located at 165 20th Street, Brooklyn, New York 11232.

9.      At all relevant times, Plaintiff was an "employee" of GQT within the meaning of the FLSA, 29 U.S.C. § 203(e), as well as under the New York Labor Law and its implementing regulations.

10.     At all relevant times, GQT was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), as well as under the New York Labor Law and its implementing regulations.

11.     At all relevant times, GQT was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s).

## FACTUAL ALLEGATIONS

12.    Mr. Lesane began working for GQT in or about June 2014.  His title was "driver/chauffer".  Mr. Lesane was never issued either a W-2 or an IRS Form 1099 by GQT.  Mr. Lesane's rate of pay was $20 per hour.

13.    GQT is a "black-car" transportation service, providing pick-up and drop-off services with a fleet of vehicles ranging from sedans to limousines and buses.

14.    Mr. Lesane's job duties consisted of driving a GQT issued limo-bus from GQT's garage to a predetermined location where Mr. Lesane would pick up passengers, drive them to another location or several other locations, and then drop the passengers off and drive the limo-bus back to GQT's garage.

15.    GQT required Mr. Lesane to arrive at it's garage two-to-three hours before his scheduled route each day so that he could inspect the limo-bus and review his route for that day.

16.    Throughout Mr. Lesane's employment, GQT failed to pay him for what is referred to as "garage time", which are the hours that Mr. Lesane spent in GQT's garage inspecting and preparing the vehicle for the day's route.  "Garage time" ranged from two to three hours.  Mr. Lesane was required to do this work by GQT.  GQT was aware that Mr. Lesane was performing this work.  At no point did anyone at GQT express in any way that Mr. Lesane was not supposed to be performing this "garage time" work.

17.    GQT further failed to pay Mr. Lesane for the hours he worked driving to the location where he would pick up the passengers.  Depending on the length of the trip to pick up the passengers, as well as factoring in the potential for traffic and GQT's requirement that he be at the pick-up location early, these unpaid trips were consistently over an hour in length, and oftentimes over two hours.  GQT documents, including a document from GQT titled "Rules of

3

Conduct", stated that "employees" would be paid for the time they spent driving to their pick-up location.

18.     GQT further failed to pay Mr. Lesane for the time he spent driving the vehicle back to GQT's garage after Mr. Lesane had completed his trip by dropping off all of his passengers. GQT told employees that they would be compensated for this time as well.

19.     GQT consistently required Mr. Lesane to work over ten hours a day and six days a week.  However, GQT did not pay Mr. Lesane overtime pay at the required rate of one and one-half times his regular rate for hours worked in excess of forty in a given week.

20.     GQT determined Mr. Lesane's work schedule.  GQT directed Mr. Lesane each day regarding what his route would entail that day.  Mr. Lesane did not have the ability to "reassign" his issued route to another person.

21.     Customers booking limo-bus services dealt directly with GQT.  Mr. Lesane did not have the ability to choose his own route or to independently schedule a trip.

22.     If Mr. Lesane ever refused to do a particular route, GQT would "punish" him by not assigning him any routes for the next few weeks, and would threaten to terminate him.

23.     GQT informed their customers that tips were included in the price of the transportation service.  However, GQT did not give any payments to Mr. Lesane as an amount for tips.  Furthermore, upon information and belief, when customers would ask that an additional amount be charged to them as a tip for their driver, GQT would not give this additional amount to the driver.

24.     Mr. Lesane did not have any ownership interest in the limo-bus, nor did he make any payments to anyone in order to use or lease the limo-bus.

25.     If Mr. Lesane received a parking ticket while driving for GQT, GQT would deduct the dollar amount of the parking ticket from Mr. Lesane's pay.

26.     GQT set up guidelines for their employees, including Mr. Lesane, which contained rules regarding dress code and rules stating that vehicles must be returned with a full tank of gas. GQT required drivers to communicate to Dispatch any time that they would be unreachable by phone for even a few hours, and to alert Dispatch if the driver would be unavailable by phone when taking a day off.

27.     Company documents from GQT which were given to Mr. Lesane refer to the documents' recipients as "employees" of GQT.

28.     During Mr. Lesane's tenure with GQT, GQT consistently told their employees that they would set up a "punch in/punch out" system for employees to clock in and out for "garage time" pay purposes.  However, GQT never installed such a system.

29.     Defendant failed to give Plaintiff a notice of pay rate as required by the New York Wage Theft Prevention Act.

<u>**COLLECTIVE/CLASS ALLEGATIONS**</u>

30.     Plaintiff brings this action on behalf of himself and other similarly situated individuals who were employed by GQT as drivers/chauffeurs at any time during the relevant limitations periods, and who were not paid in accordance with applicable federal and state labor laws and regulations.

31.     At all relevant times, Defendant was aware of their obligations to pay the Plaintiff and other similarly situated employees in accordance with federal and state labor laws and regulations, but failed to do so.

32.     The Plaintiff and similarly situated employees were the victims of a common policy

or practice of the Defendant, to wit, the knowing and willful failure to pay drivers/chauffeurs in accordance with the applicable federal and state labor laws and regulations.

33.     Alternatively, Defendant failed to pay Plaintiff and other similarly situated individuals payments owed to them for work done under the terms of their employment relationship; specifically garage time work and time driving to and from routes.

34.     The proposed class is too numerous that joinder of all members is impracticable.

35.     The Plaintiff's claims are typical of the claims of other similarly situated drivers/chauffeurs.  At all relevant times, the Defendant treated Plaintiff and other similarly situated employees in the same manner as pertains to the payroll policies and practices at issue in this lawsuit.  Any lawsuit brought by other drivers/chauffeurs for the same violations would be identical to Plaintiff's.

36.     There are questions of law or fact common to the Plaintiff and similarly situated individuals, including but not limited to: how Defendant classified its employees, how Defendant calculated and paid its employees' wages, whether Defendant properly paid employees for all hours worked, whether Defendant properly paid employees for overtime hours worked, and whether Defendant provided employees with pay rate notices.

37.     The Plaintiff will fairly and adequately protect the interests of the proposed class members.  Plaintiff has no interests antagonistic to the class members.

### FIRST CAUSE OF ACTION
### UNPAID OVERTIME
#### (Fair Labor Standards Act)

38.     Plaintiff repeats and realleges each paragraph above.

39.     At all relevant times, Defendant was a covered employer within the meaning of the FLSA.

40.    At all relevant times, the Plaintiff and other similarly situated individuals were covered employees within the meaning of the FLSA.

41.    Defendant willfully employed Plaintiff and other similarly situated individuals for workweeks longer than forty hours and failed to compensate them for their employment in excess of forty hours per week at a rate of at least one-and-one-half times the rate at which he was employed.

42.    Defendant failed to pay overtime wages to the Plaintiff and other similarly situated individuals as required by the FLSA, 29 U.S.C. § 201, *et seq.*, and its implementing regulations.

43.    Defendant's failure to pay Plaintiff and other similarly situated individuals overtime pay in accordance with the FLSA is a direct violation of the FLSA, specifically 29 U.S.C. § 207.

44.    Defendant's failure to pay proper overtime wages for each hour worked over forty per week was willful and not in good faith.

45.    As a result of Defendant's failure to comply with the FLSA, Plaintiff and other similarly situated individuals are entitled to recover unpaid overtime pay, liquidated damages, attorney's fees and costs, and all other relief available under the FLSA.

## SECOND CAUSE OF ACTION
## UNPAID WAGES
### (New York State Labor Law)

46.    Plaintiff repeats and realleges each paragraph above.

47.    At all relevant times, Defendant was a covered employer within the meaning of the NYLL.

48.    At all relevant times, the Plaintiff and other similarly situated individuals were covered employees within the meaning of the NYLL.

49. The New York State Labor Law, Article 6 § 191(1)(d), requires employers, in relevant part, to pay employees "in accordance with the agreed terms of employment."

50. As alleged herein, Defendant failed to pay Plaintiff and other similarly situated individuals in accordance with the agreed terms of employment, specifically payment for "garage time" and time driving to and from the pick-up/drop-off location.

51. Defendant's failure to pay the Plaintiff and other similarly situated individuals in accordance with their agreed upon terms of employment was willful and not in good faith.

52. As a result of Defendant's unlawful conduct, the Plaintiff and others similarly situated are entitled to recover unpaid wages, liquidated damages, attorney's fees and costs, and all other relief available under the New York State Labor Law.

**THIRD CAUSE OF ACTION**
**UNPAID OVERTIME**
**(New York State Labor Law)**

53. Plaintiff repeats and realleges each paragraph above.

54. As alleged herein, Defendant required Plaintiff and other similarly situated individuals to work in excess of forty hours per week.

55. The New York Labor Law requires employers, in relevant part, to pay employees overtime "at a wage rate of one and one-half times the employee's regular rate."

56. As alleged herein, Defendant failed to pay Plaintiff and other similarly situated individuals overtime pay as required under the NYLL.

57. Defendant's failure to properly pay the Plaintiff and other similarly situated individuals overtime wages was willful and not in good faith.

58.     As a result of Defendant's unlawful conduct, the Plaintiff and others similarly situated are entitled to recover unpaid wages, liquidated damages, attorney's fees and costs, and all other relief available under the New York State Labor Law.

## FOURTH CAUSE OF ACTION
## FAILURE TO PROVIDE NOTICE OF PAY RATE
### (New York Wage Theft Prevention Act)

59.     Plaintiff repeats and realleges each paragraph above.

60.     Defendant failed to provide Plaintiff and other similarly situated individuals written notice regarding: their regular rate of pay, their overtime rate of pay, how they were to be paid, their regular payday, the official name of the employer and any other names used for business, the address and phone number of the employer's main office, and allowances taken as part of the minimum wage (including, inter alia, tips) in violation of NYLL § 195.

61.     Defendant's failure to provide the required pay rate notices to Plaintiff and other similarly situated individuals was willful and not in good faith.

62.     Under the NYLL, Defendant is liable for failing to provide the required notice of pay rate in an amount of fifty dollars per week for each week the violation occurred, but not to exceed a total of five thousand dollars.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT
### (New York law)

63.     Plaintiff repeats and realleges each paragraph above.

64.     Plaintiff pleads the following "in the alternative" to his claims under the FLSA and the NYLL:

65.     As alleged herein, Plaintiff agreed to perform driving/chauffeur services for Defendant in exchange for $20 per hour of work.

66.     As alleged herein, Defendant was obligated to pay Plaintiff and other similarly situated individuals for time worked at Defendant's garage before each trip, and for time worked driving to and from each trip.

67.     Defendant breached this contract when it failed to pay Plaintiff and other similarly situated individuals for these hours worked as required under the terms of their employment agreement.

68.     As a result of Defendant's breach, Plaintiff and other similarly situated individuals have suffered damages equal to their rate of pay multiplied by the number of hours worked for Defendant without pay.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Procedure 38, Plaintiff Curtis Lesane, on behalf of himself and all others similarly situated, hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, on behalf of himself and all others similarly situated, prays for relief as follows:

A. Designation of this action as a collective action under the FLSA on behalf of the Plaintiff and similarly situated individuals who were employed by Defendant during the relevant limitations period, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA opt-in class members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B. Designation of Plaintiff and his counsel as representatives of the FLSA opt-in class

members;

C. Certification of this action as a class action pursuant to F.R.C.P. 23 on behalf of the Plaintiff and similarly situated individuals employed by Defendant during the relevant limitations period for violations of the NYLL and/or breach of contract.

D. Designation of the Plaintiff and his counsel as representatives of the Rule 23 class members;

E. A judgment declaring that Defendant violated the FLSA and NYLL as alleged herein;

F. A judgment declaring that Defendant's violations were willful and not in good faith;

G. Awarding damages to the Plaintiff, the FLSA collective action members, and the Rule 23 class members, for all lost income resulting from Defendant's unlawful employment practices and to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

H. Pre-judgment and post-judgment interest as allowed by law;

I. Awarding Plaintiffs liquidated damages;

J. Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

K. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
       January 30, 2017

By:

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

David Schwartz, Esq. (DS5982)
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
Tel: (212) 248-7431
Fax: (212) 901-2107
dschwartz@tpglaws.com

12